IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| MEGAN E. DAWSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:23-CV-431-ECM-KFP |
| | ) | |
| NANCY BUCKNER, et al., | ) | |
| | ) | |
| Defendant. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Proceeding pro se, Plaintiff Megan E. Dawson filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. She challenges various decisions of the Russell County juvenile court that impacted her parental rights over her minor child, C.D. Because the custody decision is not within the purview of this Court, the undersigned concludes the petition should be dismissed.

**I.     BACKGROUND AND PROCEDURAL HISTORY**

The following facts are drawn from Dawson's habeas petition and the court documents she attaches to it.[1] Doc. 1. According to Dawson, on June 4, 2014, when her child was 18 or 19 months old, he suffered an inexplicable injury while she was at work and the child was in the care of Eric Jordan. The child suffered severe brain damage. On June 4, 2014, the Russell County Department of Human Resources (RCDHR) made, and

---

[1] Dawson has attached some court records from the juvenile court proceedings in Russell County. While these court records are confidential, Dawson has made them a part of this public record by filing them. The Court takes judicial notice over the public records, including the relevant state court records that are filed with the petition and those available on the Alabama Trial Court System hosted at www.alacourt.com. *See Universal Express, Inc. v. U.S. S.E.C.*, 177 F. App'x 52, 53 (11th Cir. 2006) (citation omitted).

was granted, an emergency request for pickup order to obtain custody of the child while he was on a ventilator in the ICU of the hospital following his injury that day. A Shelter Care hearing was held on June 6, 2014, and the court issued an order on June 9, 2014, allowing RCDHR to make any medical decisions required by the hospital. This was a temporary order that allowed, among other things, time for a determination to be made as to the identity of the biological father who was unknown at that time and for a police investigation to proceed as to abuse allegations related to C.D.'s injury.[2]

Both Dawson and C.D.'s maternal grandmother filed motions to vacate or reconsider the June 9 order, which the court treated as petitions to modify custody. Eventually, the court held a permanency hearing on February 7, 2019, and ordered the child placed in the legal custody of his father and not his mother. The court also ordered that "[t]he child's father, with his consent, is to not remove the child from Father Purcell [Memorial Exceptional Children's Center] without filing a motion and asking permission to do so, and giving prior notice of that motion to the child's mother[.]" Doc. 1-6. The court "removed [the child] from the legal custody of the Russell County Department of Human Resources." *Id*. Dawson was granted limited visitation hours under supervision and subject to approval of the Father Purcell home. *Id*.

A later attempt by Dawson to modify the custody order on the basis of a recusal motion was denied on October 13, 2022. Thus, it appears the disabled minor child remains

---

[2] Jordan, who is referenced as Dawson's paramour in some of the juvenile records Dawson has attached, pleaded guilty to Child Abuse, a Class C felony, in March 2016. Russell County Circuit Court Case No. CC-2014-844, Doc. 35. Criminal abuse charges against Dawson were eventually nolle prossed. Russell County Circuit Court Case No. CC-2014-717, Doc. 21.

in the legal custody of the father as of the juvenile court's 2019 order, and Dawson, the mother, remains limited to specified visitation of the child who remains, pursuant to court order, at the Father Purcell Memorial Exceptional Children's Center.

Dawson claims various violations of the Constitution and federal law based on the custody decisions. She wants C.D. returned to her physical custody and to her preferred care "in a home setting and not . . . institutionalized." Doc. 1.

## II.    STANDARD OF REVIEW

Although Dawson paid the filing fee to pursue this action, the Court maintains inherent authority to dismiss her case if it finds it frivolous. *See Cuyler v. Aurora Loan Servs., LLC*, No. 12-11824-DD, 2012 WL 10488184, at *2 (11th Cir. Dec. 3, 2012) (notwithstanding filing fee payment, "a district court has the inherent authority to dismiss a patently frivolous complaint"); *Jefferson Fourteenth Assocs. v. Wometco de Puerto Rico, Inc.*, 695 F.2d 524, 526 n.3 (11th Cir. 1983) (noting that courts may *sua sponte* dismiss actions lacking merit "if the proper procedural steps are taken and if the determination is correct on the merits"); *Davis v. Kvalheim*, 261 F. App'x 231, 234 (11th Cir. 2008) ("[D]istrict courts have the inherent power to *sua sponte* dismiss frivolous suits without giving notice to the parties.") (citing *Jefferson Fourteenth Associates*, 695 F.2d at 526). A complaint may be deemed "frivolous" when a court discerns from its face "that the factual allegations are 'clearly baseless' or that the legal theories are 'indisputably meritless.'" *Davis*, 261 F. App'x at 235 (quoting *Carroll v. Gross*, 984 F.2d 392, 393 (11th Cir. 1993)); *see also Denton v. Hernandez*, 504 U.S. 25, 32 (1992) (discussing "frivolity" in the context of 28 U.S.C. § 1915).

Additionally, dismissal may be warranted if a court lacks jurisdiction. "[A] court should inquire into whether it has subject matter jurisdiction at the earliest possible stage in the proceedings. Indeed, it is well settled that a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999); *see also Davis v. Ryan Oaks Apartment*, 357 F. App'x 237, 238–39 (11th Cir. 2009) (stating complaint is frivolous under § 1915 where court lacks subject matter jurisdiction).

## III. DISCUSSION

A district court may entertain a habeas petition on "behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Dawson premises her putative habeas petition on the notion that her minor child is in the custody of the state for purposes of § 2254 because the child is court-ordered to the legal custody of the father and housed in the Father Purcell home.

The Supreme Court, however, has rejected Dawson's argument that federal habeas corpus is available to collaterally review the type of state court judgment at issue here.[3] A similar case from another district court in this circuit succinctly sets forth this precedent arising from the Supreme Court's decision in *Lehman v. Lycoming Cnty. Children's Servs. Agency*, 458 U.S. 502 (1982). *Lehman* held that § 2254 does not confer "jurisdiction on the

---

[3] Dawson's petition suggests that the custodial order has already been subject to appeal to the Alabama Court of Civil Appeals. *See* Docs. 1-25, 32.

federal courts to consider collateral challenges to state-court judgments involuntarily terminating parental rights." *See id.* at 503, 515–16. The Court explained:

> [Ms. Lehman's] sons, of course, are not prisoners. Nor do they suffer any restrictions imposed by a state criminal justice system. These factors alone distinguish this case from all other cases in which this Court has sustained habeas challenges to state-court judgments. Moreover, although the children have been placed in foster homes pursuant to an order of a Pennsylvania court, they are not in the "custody" of the State in the sense in which that term has been used by this Court in determining the availability of the writ of habeas corpus.
>
> They are in the "custody" of their foster parents in essentially the same way, and to the same extent, other children are in the custody of their natural or adoptive parents. Their situation in this respect differs little from the situation of other children in the public generally; they suffer no unusual restraints not imposed on other children. They certainly suffer no restraint on liberty as that term is used in *Hensley* and *Jones*, and they suffer no "collateral consequences"—like those in *Carafas*—sufficient to outweigh the need for finality.
>
> The "custody" of foster or adoptive parents over a child is not the type of custody that traditionally has been challenged through federal habeas. Ms. Lehman simply seeks to relitigate, through federal habeas, not any liberty interest of her sons, but the interest in her own parental rights.
>
> Although a federal habeas corpus statute has existed ever since 1867, federal habeas has never been available to challenge parental rights or child custody.

*Bennett v. Dep't of Child. & Fams.*, No. 5:20-CV-81-RV-MJF, 2020 WL 1943029, at *2 (N.D. Fla. Mar. 20, 2020), *report and recommendation adopted*, No. 5:20-CV-81-RV-MJF, 2020 WL 1942306 (N.D. Fla. Apr. 21, 2020) (quoting *Lehman*, 458 U.S. at 510–11 (footnotes omitted) (in turn citing *Hensley v. Mun. Ct., San Jose Milpitas Jud. Dist., Santa Clara Cnty., California*, 411 U.S. 345 (1973), *Jones v. Cunningham*, 371 U.S. 236 (1963), and *Carafas v. LaVallee*, 391 U.S. 234 (1968))); *accord Harris v. Lester*, No. 18-CV-190-CG-B, 2018 WL 3194890, at *2 (S.D. Ala. May 22, 2018), *report and recommendation*

5

*adopted*, No. 18-CV-190-CG-B, 2018 WL 3193811 (S.D. Ala. June 28, 2018) ("In accordance with its prior holdings that the invocation of federal habeas statutes requires a deprivation of liberty, the Supreme Court has held that habeas jurisdiction may not be invoked to challenge state-court decisions regarding parental rights or child custody.") (citing *Lehman*, 458 U.S. at 510–11); *see also Holm v. Strange*, No. 16-CV-2036-MHH-SGC, 2016 WL 7407099, at *3 (N.D. Ala. Dec. 22, 2016) (denying petition for writ of habeas corpus where petitioners sought to compel Alabama Department of Human Resources to return son to their custody).

In the *Bennett* case, plaintiff challenged a state circuit court emergency shelter proceeding by the Florida Department of Children and Families that resulted in the plaintiff's stepson being placed in shelter or foster care. The *Bennett* court held that the *Lehman* precedent settled the case—no federal habeas action could proceed to challenge parental rights or child custody. The same conclusion must be reached here. Dawson cannot use § 2254 to challenge the custody granted to the biological father or the housing of the minor in the Father Pursell home pursuant to the state custody orders. The federal habeas procedure does not afford federal district courts the ability to adjudicate the custodial rights of parents. The fact that C.D. has been removed from Dawson's custody does not mean that the child is "in custody" for federal habeas purposes. The Court lacks jurisdiction, and the claim is legally frivolous. It must be dismissed *sua sponte* prior to service of process. *See Burns by & through A.B. v. Alabama*, 748 F. App'x 272 (11th Cir. 2019) (affirming the district court order adopting the magistrate judge's recommendation that, in light of *Lehman*, the case challenging a child's custody be dismissed for lack of jurisdiction);

6

*Machulas v. Lanier*, No. CV-4-13-248, 2013 WL 6795597, at *2 (S.D. Ga. Dec. 19, 2013) (holding there was "no basis for federal jurisdiction over plaintiff's 'privacy' claim, and thus this legally frivolous matter should be dismissed *sua sponte* prior to service of process") (citing *Davis*, 261 F. App'x at 234 (finding complaint may be dismissed even before service of process where its legal theories are indisputably meritless)).[4]

## IV. CONCLUSION

Accordingly, the undersigned RECOMMENDS that the petition for writ of habeas corpus (Doc. 1) be DISMISSED without prejudice.[5]

Further, it is ORDERED that by **January 23, 2024**, the parties may file objections to this Recommendation. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made. Frivolous, conclusive, or general objections will not be considered by the Court. This Recommendation is not a final order and, therefore, is not appealable.

Failure to file written objections to the proposed findings and recommendations in accordance with 28 U.S.C. § 636(b)(1) will bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waive

---

[4] Additionally, without a basis for federal jurisdiction, there is no reason to allow amendment. *Roberts v. Walton Enterprises*, No. 2:21-CV-380-MHT-KFP, 2021 WL 3423960, at *4 (M.D. Ala. July 16, 2021), *report and recommendation adopted*, No. 2:21-CV-380-MHT-KFP, 2021 WL 3432830 (M.D. Ala. Aug. 5, 2021) ("Although courts normally provide at least one opportunity for a pro se party to amend a pleading before dismissal, a court may dismiss a complaint without affording the party an opportunity to amend if it finds that any amendment would be futile.") (citing *Henry v. Fernandez-Rundle*, 773 F. App'x 596, 597 (11th Cir. 2019) (affirming dismissal without leave to amend of frivolous, sovereign-citizen like complaint)).

[5] Dawson will have fourteen days to file written objections to this Recommendation, which also serves as notice and an opportunity to respond. *See Anderson v. Dunbar Armored, Inc.*, 678 F. Supp. 2d 1280, 1296 (N.D. Ga. 2009) (noting that magistrate judge's report and recommendation would serve as notice that claims would be *sua sponte* dismissed).

the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *See* 11th Cir. R. 3-1.

DONE this 9th day of January, 2024.

/s/ Kelly Fitzgerald Pate
KELLY FITZGERALD PATE
UNITED STATES MAGISTRATE JUDGE